UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------- x

MATTHEW SCHAEFFER, Individually and
on behalf of all others similarly situated,

                         Plaintiff,

      -against-

JOSEPH DEPAOLO, STEPHEN
WYREMSKI, and ERIC HOWELL,

                     Defendants.

**MEMORANDUM AND ORDER**

No. 23-CV-1921-FB-JRC

----------------------------------------------------------------- x

PIRTHI PAL SINGH, Individually and on
behalf of all others similarly situated,

                         Plaintiff,

      -against-

SCOTT A. SHAY, JOSEPH DEPAOLO,
VITO SUSCA, MARK SIGONA, STEPHEN
WYREMSKI, and ERIC HOWELL,

                     Defendants.

No. 23-CV-2501-FB-JRC

----------------------------------------------------------------- x

JAMES R. CHO, United States Magistrate Judge:

      Plaintiff Matthew Schaeffer ("Schaeffer"), individually and on behalf of all others

similarly situated, commenced this action against Signature Bank ("Signature Bank") and

individual defendants Joseph DePaolo ("DePaolo"), Stephen Wyremski ("Wyremski"), and Eric

Howell ("Howell," and collectively, "Defendants" or "Individual Defendants"), alleging

violations of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private

Securities Litigation Reform Act of 1995 ("PSLRA").  *See Schaeffer v. Signature Bank et al.*,

No. 23-CV-1921-FB-JRC ("*Schaeffer* action"), Dkt. 1 ("*Schaeffer* Compl.").  The Individual

Defendants are former executives of Signature Bank.  Several weeks later Pirthi Pal Singh ("Singh"), individually and on behalf of all others similarly situated, brought a separate action ("*Singh* action") against Signature Bank, the three Individual Defendants in the *Schaeffer* action (*i.e.,* DePaolo, Wyremski, and Howell) and three additional defendants (*i.e*., Scott A. Shay, Vito Susca, and Mark Sigona).  *See Singh v. Signature Bank et al.*, No. 23-CV-2501, Dkt. 1 ("*Singh* Compl.") ¶¶ 24–34.[1]  Singh alleges violations of the federal securities laws by Signature Bank and former executive officers and directors.

Before the Court are two motions to consolidate the *Schaeffer* and *Singh* actions, and to appoint lead plaintiff and counsel.  The Court considers the motions of the two competing movants filed on behalf of (1) Sjunde AP-Fonden ("AP7"), and (2) Wayne County Employees' Retirement System and Public Employees' Retirement System of Mississippi ("Retirement Systems") (collectively, the "Competing Movants").  *See* Notice of Motion by AP7, Dkt. 14, and accompanying Memorandum of Law, Dkt. 15; Notice of Motion by Retirement Systems, Dkt. 17, and accompanying Memorandum of Law, Dkt. 17-2.

For the reasons set forth below, the Court consolidates these two actions, and appoints AP7 as lead plaintiff in the consolidated case.  The Court also approves AP7's selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as lead counsel.

---

[1] Unless otherwise noted, docket entry citations are to those in the *Schaeffer* action and appear as "Dkt.__."  References to the docket in the *Singh* action appears as "*Singh* Dkt. __."

## Background

### I.    Factual Background

The following facts are drawn primarily from the Complaint in the *Schaeffer* action. Supporting declarations are accepted as true for purposes of this motion.

The *Schaeffer* action arises out of the string of bank failures in March 2023 and, in particular, the collapse of Signature Bank.  On March 12, 2023, the New York Department of Financial Services ("DFS") took possession of Signature Bank, and trading in the bank's shares was halted—essentially rendering those shares valueless.  *Schaeffer* Compl. ¶¶ 24, 28.

Schaeffer's allegations concern two press releases issued in the days leading up to Signature Bank's failure.  On March 2, 2023, Signature Bank uploaded a press release linking to a presentation (the "March 2 Update").  *Id.* ¶ 17.  The March 2 Update stated "[t]he average balance quarter-to-date is $88.79 billion, which is higher than the December 31, 2022 balance of $88.59 billion, and lower than the fourth quarter 2022 quarter-to-date average balance of $98.6 billion."  *Id.*  The presentation went on to state that "[d]eposits have increased $682 million thus far this quarter, excluding digital asset client related balances" and "[t]he decrease in deposit balances this quarter has been driven by the deliberate decline in digital asset client related deposits of $1.51 billion, as the Bank continues to reduce the size of deposit relationships in this space."  *Id.* ¶ 18.  Then, on March 9, 2023, in an effort to calm investors and depositors following recent turmoil in the banking sector, Signature Bank issued another press release (the "March 9 Update") touting its "proven, stable commercial banking business model," "diversified deposit mix," and "high level of capital."  *Id.* ¶¶ 19–20.

Schaeffer argues that, due to the specific circumstances in which the DFS Superintendent may take possession of a bank, "the March 2 and March 9 Updates did not provide investors with

a full picture of the risks facing Signature Bank, or hint that it might be taken over by DFS." *Id.* ¶ 26.  Accordingly, Schaeffer brings this action alleging that the Defendants made false or misleading statements, or failed to disclose material adverse facts about Signature Bank's business, operations, and prospects. *Id.* ¶ 23.

## II.    Procedural History

On March 14, 2023, Schaeffer brought this action against Signature Bank and three of its C-suite officers. *See Schaeffer* Compl. ¶¶ 6–12.  The same day, pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A)(i), the Rosen Law Firm published notice in several publications advising purported class members of the *Schaeffer* action and informing them of the deadline to file a lead plaintiff motion. *See, e.g.*, Press Release dated March 14, 2023, Dkt. 17-5 ("March 14 Notice").

On March 31, 2023, Singh, individually and on behalf of all others similarly situated, brought a separate action against Signature Bank and six current and former officers and directors (including the three named in the *Schaeffer* action) alleging violations of the federal securities laws. *See Singh* Compl. ¶¶ 24–34.

On May 15, 2023, six investors timely moved to consolidate the *Schaeffer* and *Singh* actions and moved for appointment as lead plaintiff under the PSRLA. *See* Dkts. 5 (Aradhana Chopra), 7 (Shanker Babu), 8 (Brian Andrew Pergament and John Romano), 14 (Sjunde AP-Fonden), 17 (Retirement Systems), and 19 (City of Warren Police and Fire Retirement System, Macomb County Employees' Retirement System, and Macomb County Retiree Health Care Fund (collectively, "Macomb County Retirement Systems")).  On May 16, 2023, the Honorable Frederic Block referred the motions to the undersigned.  Four movants subsequently notified the Court of their non-opposition to the competing lead plaintiff motions leaving only the motions of

AP7 and the Retirement Systems before the Court.  *See* Dkts. 23 (Babu), 24 (Chopra), 25 (Macomb County Retirement Systems), 26 (Pergament and Romano).

On May 30, 2023, the Retirement Systems opposed AP7's lead plaintiff motion.  *See* Dkt. 28 ("Retirement Systems' Opp.").  AP7 similarly opposed the Retirement Systems' lead plaintiff motion.  *See* Dkt. 27.  Both movants subsequently filed reply memoranda.  *See* Dkt. 33 ("AP7 Reply"); Dkt. 35.

On June 29, 2023, the Federal Deposit Insurance Corporation ("FDIC") in its capacity as Receiver for Signature Bank filed a notice substituting itself as a party for Signature Bank pursuant to 12 U.S.C. § 1821(d)(2)(A).  *See* Dkt. 38.  Subsequently, the FDIC as Receiver filed a pre-motion conference letter requesting leave to move to dismiss.  *See* Dkt. 42.  AP7 and the Retirement Systems filed responses in opposition.  *See* Dkts. 44, 45.  Shortly thereafter, Schaeffer voluntarily dismissed Signature Bank—and, by extension, the FDIC—leaving only claims against the Individual Defendants remaining.  *See* Dkt. 46.  Similarly, Singh voluntarily dismissed the claims against Signature Bank.  *See Singh* Dkt. 18.  In light of the dismissal of the FDIC from the *Schaeffer* and *Singh* actions, at this stage of the litigation, the Court does not address the issues raised by the FDIC in its pre-motion conference letter as it relates to the claims against the FDIC.

## Discussion

### I.    Consolidation

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under [the Exchange Act] has been filed," courts must decide the motion for consolidation before appointing the lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(ii).  A court may consolidate actions that "involve a common question of law or fact."

Fed. R. Civ. P. 42(a)(2).  Absent prejudice to the defendants, "[c]onsolidation of multiple actions alleging securities fraud is appropriate where those actions relate to the same public statements and reports." *Chitturi v. Kingold Jewelry, Inc.*, No. 20-CV-2886, 2020 WL 8225336, at *2 (E.D.N.Y. Dec. 22, 2020) (quotations omitted).  "Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007), *reconsidered on other grounds sub nom. In re IMAX Sec. Litig.*, No. 06 Civ. 6128, 2009 WL 1905033 (S.D.N.Y. June 29, 2009).

Based on a review of the two complaints, the Court finds that these two cases involve common questions of law and fact warranting consolidation.  All movants seek to consolidate the *Schaeffer* and *Singh* actions, and there is no opposition to consolidation.  Both actions bring class claims against former corporate officers of Signature Bank arising under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5.  Both complaints allege a pattern of materially false and misleading statements relating to Signature Bank's financial stability and investments in digital currencies.  Both cases reference the two press releases issued on March 2 and 9, 2023 as evidence of the materially false or misleading statements made in the days leading up to the takeover by DFS.  While the *Singh* complaint alleges a longer class period and contains additional allegations dating back to April 23, 2020,[2] consolidation is nonetheless appropriate because "the same pattern of alleged misconduct is present over both class periods." *Rauch v.*

---

[2] The *Singh* action alleges a class period beginning in April 2020, *see Singh* Compl. ¶ 1, while the complaint in *Schaeffer* asserts allegations beginning in March 2023, *see Schaeffer* Compl. ¶ 1.  The additional allegations in the *Singh* complaint concern various press releases and earnings calls during which Signature Bank allegedly assured investors of the safety of its practices and its diversified client base. *See Singh* Compl. ¶¶ 35–55.

*Vale S.A.*, 378 F. Supp. 3d 198, 205 (E.D.N.Y. 2019) (consolidating cases despite one class period containing an additional two years of allegations).  For these reasons, the Court grants the motion to consolidate these two actions.

## II.   Notice Requirement

The PSLRA requires the plaintiff who files the first action to publish a notice to the putative class within 20 days of filing the complaint "in a widely circulated national business-orientated publication or wire service" advising members of "the pendency of the action, the claims asserted therein, and the purported class period."  15 U.S.C. § 78u-4(a)(3); *see also Darish v. N. Dynasty Mins. Ltd.*, No. 20-CV-5917, 2021 WL 1026567, at *3 (E.D.N.Y. Mar. 17, 2021).  Even where, as here, no party has objected to the adequacy of notice, "courts have an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA."  *See Chitturi*, 2020 WL 8225336, at *3 (quotations omitted).

On the same day the *Schaeffer* complaint was filed, notice of the action was published in, among other publications, *Globe Newswire*.  *See* March 14 Notice, Dkt. 17-5.  In this jurisdiction, "Globe Newswire is a suitable vehicle for meeting" the notice requirement. *Xiangdong Chen v. X Fin.*, No. 19-CV-6908, 2020 WL 2478643, at *2 (E.D.N.Y. May 13, 2020) (quotations omitted).  The notice included the class period alleged in the *Schaeffer* complaint, the purported class of purchasers, and the deadline to file a lead plaintiff motion.  *See* March 14 Notice.  The Court finds the PSLRA's notice requirement has been satisfied.

## III.   Lead Plaintiff Appointment

Under the PSLRA, courts must "appoint as lead plaintiff the member of the class that it determines to be the most adequate plaintiff, *i.e.*, *the member most capable of adequately representing the interests of class members*."  *Chitturi*, 2020 WL 8225336, at *4 (quoting 15

U.S.C. § 78u-4(a)(3)(B)(i)) (emphasis in original) (quotations omitted).  Courts generally follow a two-step inquiry to determine the most adequate plaintiff.  *See Darish*, 2021 WL 1026567, at *5.  First, the PSLRA establishes a rebuttable presumption that the most adequate plaintiff is "the person or group of persons that:  (1) has either filed the complaint or made a [timely] motion to be appointed as lead plaintiff(s); (2) in the determination of the court, has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *Chitturi*, 2020 WL 8225336, at *4 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)) (quotations omitted).

Once the court is satisfied that it has found a presumptively adequate plaintiff, the court may then consider whether that presumption has been "rebutted" by a member of the purported plaintiff class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  This presumption "may be rebutted only upon proof that the presumptively adequate plaintiff either will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  *Chitturi*, 2020 WL 8225336, at *4 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)) (quotations omitted).

Both AP7 and the Retirement Systems filed timely motions to serve as lead plaintiff within the sixty-day period prescribed by § 78u-4(a)(3)(A)(i)(II).  As discussed below, because AP7 has the largest financial interest in the litigation and satisfies a preliminary Rule 23 analysis, it is the presumptive lead plaintiff.  Although the Retirement Systems oppose AP7's motion, the Retirement Systems fail to rebut the presumption, and the Court accordingly appoints AP7 as lead plaintiff.

## A.    Largest Financial Interest

The PSLRA requires courts to "start with the rebuttable presumption that the most

adequate plaintiff is the person or entity with the largest financial interest in the relief sought." *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 234 (E.D.N.Y. 2011).  While the statute does not provide a list of factors to determine which movant has the largest financial interest, courts in this circuit generally consider:

> (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.

*Yang v. Tr. for Advised Portfolios*, No. 21-CV-1047, 2022 WL 970772, at *3 (E.D.N.Y. Mar. 31, 2022).  Most courts have held that the most important factor is the fourth:  "the approximate losses suffered by the movant."  *Id.*; *see also Bensley*, 277 F.R.D. at 234 (collecting cases).

AP7 asserts that its transactions in Signature Bank's securities during the class period resulted in losses of approximately $22,294,686, as calculated on a last-in, first-out ("LIFO") basis.  See AP7 Loss Chart, Dkt. 16-2.  In contrast, the Retirement Systems collectively claim losses of approximately $4,018,442 on a LIFO basis.  See Retirement Systems Damages Analysis, Dkt. 17-4.  No other movant claims a larger financial interest in the litigation.  AP7 clearly suffered the greatest losses as a result of Signature Bank's allegedly unlawful conduct. The Court, therefore, finds that AP7 has the largest financial interest in the litigation.

## B.    Adequacy and Typicality

Having found AP7 has the largest financial interest, the Court must also decide whether AP7 "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  A movant must make only "a preliminary showing that the adequacy and typicality requirements have been met."  *Freudenberg v. E*Trade Fin. Corp.*,

No. 07 Civ. 8538, 2008 WL 2876373, at *5 (S.D.N.Y. July 16, 2008); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) ("A wide ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification.") (citation omitted), *opinion adhered to on reconsideration sub nom. In re Olsten Corp.*, 181 F.R.D. 218, 219 (E.D.N.Y. 1998).

The typicality requirement is satisfied "where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability." *Lavin v. Virgin Galactic Holdings, Inc.*, No. 21-CV-3070, 2021 WL 5409798, at *7 (E.D.N.Y. Sept. 17, 2021) (quotations omitted). A movant's claim "need not be identical to the claims of the class to satisfy the typicality requirement." *City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortg. Loan Tr. Inc.*, No. CV-08-1418, 2009 WL 10709107, at *3 (E.D.N.Y. Mar. 9, 2009) (quotations omitted), *report and recommendation adopted*, 2009 WL 10750336 (E.D.N.Y. Mar. 16, 2009). Rather, courts appoint lead plaintiffs when their "claims are based on the same alleged false or misleading statements and omissions attributed to [d]efendants during the same period as the other potential class members' claims." *Lavin*, 2021 WL 5409798, at *7. Here, AP7 claims to have purchased shares of Signature Bank's stock within the class period in reliance on the allegedly false and misleading statements and suffered resulting losses. AP7's claims, therefore, are typical of the proposed class.

The adequacy requirement is met where a movant "will fairly and adequately protect the interests of the class." *Chitturi*, 2020 WL 8225336, at *5 quotations omitted). For a lead plaintiff to satisfy this requirement:

> (1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation. Additionally, the lead plaintiff should have a sufficient

interest in the outcome to ensure vigorous advocacy.

*Kehoe v. 3D Sys. Corp.*, No. 21-CV-1920, 2021 WL 5408923, at *5 (E.D.N.Y. July 13, 2021).

No evidence is raised to suggest any conflict between AP7 and the remainder of the class.  As

discussed below, AP7's selected counsel, Bernstein Litowitz and Kessler Topaz, are experienced

in securities litigation and qualified to litigate this action.  Lastly, courts generally find that a

movant's substantial financial stake in the litigation indicates an interest in its outcome.  *See*

*Yang*, 2022 WL 970772, at *4 (finding "sophisticated investment firm that sustained substantial

financial losses" has sufficient interest in outcome).  The Court is persuaded that AP7's

substantial losses will motivate it to pursue the case with "vigorous advocacy."  AP7 is a

presumptively adequate plaintiff.

### C.     Rebutting the Presumption

The lead plaintiff presumption may be rebutted "only upon proof" that the presumptively

adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject

to unique defenses that render [it] incapable of adequately representing the class."  15 U.S.C. §

78u-4(a)(3)(B)(iii)(II).  "Conclusory assertions and mere speculation will not suffice."  *Murphy*

*v. JBS S.A.*, No. 17-CV-3084, 2017 WL 4480751, at *5 (E.D.N.Y. Oct. 6, 2017) (citing *OFI Risk*

*Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 403 (D. Del. 2014)).

The Retirement Systems raise three issues in opposition to AP7's motion; however, the

Court finds that the Retirement Systems' arguments fail to rebut AP7's lead plaintiff

presumption.[3]

---

[3] The Retirement Systems initially argued that AP7's retention of two law firms as counsel and proposal that two law firms serve as co-lead counsel for the class renders AP7 inadequate under Rule 23.  *See* Retirement Systems' Opp. at 19–21.  The Retirement Systems later withdrew this argument.  *See* Dkt. 32.  In light of this withdrawal, the Court does not take into account AP7's

1.      **Standing**

First, the Retirement Systems argue that AP7 is subject to unique defenses because it has

not established that it has standing to sue on behalf of the AP7 Equity Fund.  *See* Retirement

Systems' Opp. at 11–18.  The Equity Fund is "a pool of assets not capable of taking any legal

action itself."  *See* AP7 Certification, Dkt. 16-1, at ECF page 2.[4]  The Retirement Systems claim

that because AP7 is not the beneficial owner of the Signature Bank securities at issue, and

because it has not received a formal assignment of claims from the Equity Fund, it has not

suffered an injury-in-fact and exposes the class to standing defenses.  *See* Retirement Systems'

Opp. at 12–13.

The Retirement Systems ground their argument in *W.R. Huff Asset Mgmt. Co., LLC v.

Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008), which held that an investment manager did

not have third-party standing to sue on behalf of its clients.  To qualify for third-party standing, a

plaintiff must "demonstrate (1) a close relationship to the injured party and (2) a barrier to the

injured party's ability to assert its own interests."  *Id.* at 109.  The Second Circuit found that the

investment manager-client relationship is not sufficiently close, and that the manager's clients

were sophisticated parties that were capable of asserting their own claims—and had done so in

parallel litigation.  *See id.* at 110.

Two cases in this circuit, both cited by the Retirement Systems, applied *Huff* to deny

third-party standing to investment managers—including AP7.  *See Pipefitters Loc. No. 636

Defined Ben. Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191 (S.D.N.Y. 2011); *Baydale v. Am.

---

decision to retain two law firms to serve as co-lead counsel in deciding whether AP7 is an
adequate plaintiff.

[4] References to the page numbers generated by the Court's electronic case filing system appear
as "ECF page."

*Exp. Co.*, No. 09 Civ. 3016, 2009 WL 2603140, at *4 (S.D.N.Y. Aug. 14, 2009).  However, more

recently, the same court has adopted the reasoning of the Southern District of Florida in *United*

*Union of Roofers, Waterproofers & Allied Workers Loc. Union No. 8 v. Ocwen Fin. Corp.*, No.

14 Civ. 81507, 2014 WL 7236985, at *3 (S.D. Fla. Nov. 7, 2014), which noted other courts'

negative treatment of *Pipefitters* and *Baydale*, and concluded that AP7 has third-party standing.

Accordingly, several recent cases in this circuit have followed suit and appointed AP7 lead

plaintiff despite challenges to the company's standing.  *See, e.g., Cohen v. Luckin Coffee Inc.*,

No. 20-CV-1293, 2020 WL 3127808, at *7 (S.D.N.Y. June 12, 2020); *Plaut v. Goldman Sachs*

*Grp., Inc.*, No. 18-CV-12084, 2019 WL 4512774, at *6 (S.D.N.Y. Sept. 19, 2019); *see also*

*Sjunde AP-Fonden v. Gen. Elec. Co.*, No. 17-CV-8457, Dkt. 139 (Order on Motion to Appoint

Lead Plaintiff(s)) (S.D.N.Y. May 23, 2018).

Moreover, AP7 has been appointed lead plaintiff in at least thirteen PSLRA actions and it

has achieved class settlements in eight of those cases.  *See* Chart of AP7 Cases, Dkt. 34-2.

AP7's track record, along with recent cases in this circuit rejecting *Baydale* and *Pipefitters*,

convince the Court that the issue of AP7's standing is largely settled and will not expose the

class to unique defenses.  As a result, questions regarding AP7's standing do not rebut the

presumption of adequacy.

### 2. Discovery Misconduct Allegations

Next, the Retirement Systems claim AP7 is inadequate and subject to unique defenses

because of a recent discovery dispute in separate litigation, *Sjunde AP-Fonden v. The Goldman*

*Sachs Group, Inc. et al.*, No. 18-CV-12084 (S.D.N.Y. Jan. 27, 2022).  *See* Retirement Systems'

Opp. at 21–22.  In the opposition to plaintiff's class certification motion, *Goldman Sachs* alleged

that AP7 "actively" and "intentionally" deleted monthly trade reports, "cast[ing] doubt on AP7's

credibility and adequacy."  Goldman Class Cert. Opposition excerpt, Dkt. 36-7.  But these speculative assertions likewise fail to rebut the presumption of adequacy.  *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 20-CV-8585, 2021 WL 148752, at *8 (S.D.N.Y. Jan. 15, 2021) ("While presumptive lead plaintiffs may be rejected on the basis of risks of unique defenses, such risks must be supported by proof and rise above the level of mere speculation.").

In essence, the Retirement Systems argue that because the defendant in a separate (albeit similar) lawsuit raised defenses regarding AP7's document retention practices, AP7's appointment risks subjecting the class to the same defenses in *this* litigation.  The Court agrees with AP7 that the speculative nature of these concerns fails to rebut the presumption of adequacy in AP7's favor.  *See Woburn Ret. Sys. v. Salix Pharms., Ltd.*, No. 14-CV-8925, 2015 WL 1311073, at *9 (S.D.N.Y. Mar. 23, 2015) ("[M]ere allegations of wrongdoing, without a finding established on the record, are insufficient to rebut [lead plaintiff's] presumption of adequacy.") (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 270 (3d Cir. 2001)).

The two cases the Retirement Systems cite in support of their argument do not persuade the Court.  *See Koss v. Wackenhut Corp.*, No. 03 Civ. 7679, 2009 WL 928087, at *7 (S.D.N.Y. Mar. 30, 2009) (disqualifying potential class representatives who missed depositions and failed to respond to discovery requests in same litigation); *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 137 (S.D.N.Y. 2007) (similar).  Although some courts at the class certification stage have deemed a plaintiff an inadequate representative for discovery misconduct in the same suit, the Retirement Systems offer no proof that the defendants here will have reason to raise such a defense at a later stage of this litigation.  Further, at least one court in a neighboring jurisdiction rejected the same argument, concluding that such unadjudicated allegations amount to "conjecture regarding future discovery misconduct" and thereby fail to rebut AP7's presumption

of adequacy.  *Patel v. Coinbase Glob., Inc.*, No. 22-CV-4915, 2022 WL 17582549, at *5 (D.N.J.

Dec. 12, 2022).  The Court agrees.

### 3.    Short Selling

Lastly, the Retirement Systems argue AP7's alleged short selling of securities subjects it

to unique defenses and renders it an inadequate lead plaintiff.  *See* Retirement Systems' Opp. at

22–23.  Once again, the Retirement Systems do not provide sufficient evidence to defeat the

presumption in favor of AP7.  The Court takes note of the abundant case law declining to appoint

lead plaintiffs who engage in short selling of the securities at issue in the litigation.  *See, e.g.*,

*Rodriguez v. DraftKings Inc.*, No. 21 Civ. 5739, 2021 WL 5282006, at *10 (S.D.N.Y. Nov. 12,

2021); *Marcus v. J.C. Penney Co.*, No. 13-CV-736, 2014 WL 11394911, at *7 (E.D. Tex. Feb.

28, 2014); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1109-10 (N.D. Cal. 2001);

*In re Bank One Shareholders Class Actions*, 96 F. Supp. 2d 780, 783-84 (N.D. Ill. 2000).  As the

Competing Movants acknowledge, short sales call into question a plaintiff's typicality among

other investors in the class because, while the typical investor loses money when the price of the

security decreases, short sellers profit.  *See J.C. Penney*, 2014 WL 11394911, at *7.  Further,

short selling "raise[s] the question of whether the seller was actually relying on the market price"

of the securities at issue, which may subject the class to unique defenses.  *Critical Path*, 156 F.

Supp. 2d at 1009-10.

However, in these types of cases, the court is often presented with records of the

presumptive lead plaintiff's atypical trading history rather than speculative allegations.  *See*

*DraftKings*, 2021 WL 5282006, at *7 (relying on loss charts detailing short sales in securities at

issue throughout the class period); *J.C. Penney*, 2014 WL 11394911, at *7 (reviewing records

showing that movant bought and sold its entire portfolio in securities at issue "on the same or

next trading day on at least ten different instances").  As AP7 points out in its reply brief, the courts in all of these cases disqualified plaintiffs based on evidence that they shorted the securities *at issue* in the litigation.  *See* AP7 Reply at 14 n.6.  The same is not alleged in this case.

Here, the Retirement Systems do not allege that AP7's loss chart reveals any short selling of Signature Bank's securities.  Instead, they base their challenge on deposition testimony from AP7's CEO, Richard Gröttheim, acknowledging that AP7's investment strategy includes occasional short selling.  *See* Retirement Systems' Opp. at 22.  The Retirement Systems conclude from this testimony that AP7 short sells "across the board," *id.*, but this inference is unfounded.  No prior lead plaintiff decisions disqualify a presumptive plaintiff based on such tenuous reasoning, and this case will not be the first.  *See, e.g., Murphy*, 2017 WL 4480751, at *7 (finding allegations of "potential use of tax havens" and "supposed economic illogic" of plaintiff's investment strategy insufficient to rebut the presumption).  As a result, the Retirement Systems fail to rebut the presumption in favor of appointing AP7 as lead plaintiff.

## IV.  Appointment of Lead Counsel

The PSLRA permits the lead plaintiff to select and retain lead counsel, subject to the Court's approval.  15 U.S.C. § 78u-4(a)(3)(B)(v).  AP7 has selected Bernstein Litowitz and Kessler Topaz, both experienced law firms in securities class action litigation.  The Retirement Systems do not challenge AP7's selection.  The Court finds no reason why these firms would not adequately represent the class.

**Conclusion**

For the reasons set forth above, the Court grants AP7's motion to consolidate the *Schaeffer* and *Singh* actions and appoints AP7 as lead plaintiff with Bernstein Litowitz and Kessler Topaz as lead counsel.  The other pending motions for appointment of lead plaintiff and approval of lead counsel are rendered moot.

**SO ORDERED**

Dated: Brooklyn, New York
      August 10, 2023

s/ James R. Cho
James R. Cho
United States Magistrate Judge
